United States Courts
Southern District of Texas
FILED
November 10, 2026
Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | CRIMINAL NO.: **4:26-cr-719** |
| | § | |
| v. | § | |
| | § | |
| NANCY BURCIAGA, | § | |
| Defendant | § | |
| | § | |

# INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

At all times material to this Information:

## Introduction

*The Medicare Program*

1. Medicare was a federal health care program administered by the Centers for Medicare and Medicaid Services ("CMS") that provided benefits to individuals aged 65 or older or with qualifying disabilities ("beneficiaries").

2. Medicare Part D, established by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 and effective January 1, 2006, provided prescription drug coverage through private insurance plans funded by CMS.

3. Pharmacies participated in Medicare Part D through agreements with Part D Plans, Pharmacy Benefit Managers ("PBMs"), or Pharmacy Services Administrative Organizations ("PSAOs"). PBMs administered prescription drug benefits and processed reimbursement claims on behalf of Part D Plans.

4. CMS assigned each pharmacy a National Provider Identifier ("NPI"), which the pharmacy used to submit reimbursement claims. Pharmacies could seek reimbursement only for

medications legitimately prescribed and actually dispensed.

5. After dispensing a prescription, a pharmacy submitted a claim using its NPI and the beneficiary's Part D identification information. The Part D Plan or PBM reviewed the claim and, if approved, reimbursed the pharmacy directly or through a PSAO. Pharmacies could also submit out-of-network claims, generally at lower reimbursement rates.

6. Medicare and Medicare Part D Plan sponsors were "health care benefit programs" affecting commerce within the meaning of 18 U.S.C. § 24(b).

**Commercial Insurance**

7. Commercial insurers provided health care benefits to enrolled individuals ("members") and constituted "health care benefit programs" affecting commerce under 18 U.S.C. § 24(b).

8. Commercial prescription drug plans were offered by insurers, employers, and other private entities and administered through PBMs. Pharmacies submitted prescription claims to the applicable plan or PBM for reimbursement.

9. Pharmacies could seek reimbursement from commercial insurers only for medications legitimately prescribed and actually dispensed.

**Relevant Entities, Individuals, and Financial Accounts**

10. Defendant Nancy Burciaga **(BURCIAGA)** was a resident of 6636 Avenue N, Houston, Texas and the owner of Alicare Pharmacy ("Alicare") from in or about October 2024 through the April 2025.

11. Alicare was a limited liability company formed under the laws of Texas. Alicare had where it purportedly operated as a pharmacy without a physical premise.

12. On or about January 10, 2025 **BURCIAGA** opened an account at Woodforest National Bank was added as the sole authorized signatory on Alicare's Woodforest National Bank checking account ending in 2775.

**COUNT ONE**
**Conspiracy to Defraud the United States, to False Statements Relating to Health Care Matters (18 U.S.C. § 371)**

13. Paragraphs 1 through 12 of this Information are incorporated by reference as if fully set forth herein. Between in or about January 2025 and in or about January 2026, in the Southern District of Texas, the defendant,

**NANCY BURCIAGA**

did knowingly and willfully combine, conspire, confederate and agree with others known and unknown to defraud the United States and to commit offenses against the United States, to wit: making false statements relating to health care matters contrary to Title 18, United States Code Section 1035.

**Purpose of the Conspiracy**

The purpose of the conspiracy was for **BURCIAGA** to wrongfully enrich herself and others by facilitating Alicare's submission of false and fraudulent claims to health care benefit plans for prescription drugs that it did not dispense and which were not legitimately prescribed. Over the course of the conspiracy, **BURCIAGA** and her co-conspirators facilitated Alicare's submission of claims for, and receipt of over 1.3 million dollars from health care benefit programs.

## Overt Acts

14. In furtherance of the conspiracy, and to achieve its object and purpose, the Defendant and her co-conspirators committed and caused to be committed at least one of the following overt acts:

a. On or about the dates specified below, in the Southern District of Texas and elsewhere, **NANCY BURCIAGA** and her co-conspirators submitted and caused to be submitted the following false and fraudulent claims to Medicare for payment for prescription medications that were not legitimately prescribed and that Alicare did not actually dispense to Medicare beneficiaries:

b. On or about October 10, 2024, co-conspirators directed **BURCIAGA** to purchase Alicare for $49,500.00.

c. On or about October 9, 2024, co-conspirators directed **BURCIAGA** to sign Texas State Board of Pharmacy documents falsely identifying her as the sole owner of the pharmacy, when, in truth and in fact, **BURCIAGA** was merely a straw owner who, in exchange for payment, signed documents at the direction of co-conspirators and exercised no actual ownership, management, or decision-making authority over the pharmacy.

d. Between January 10, 2025 and on or about May 30, 2025, the Woodforest National Bank account x2775 received over $1.3 million dollars in payments from health care benefit plans for prescription medications that were not legitimately prescribed, and

that Alicare never dispensed.

e. Between October 2024 and in or about April 2025, **BURCIAGA** received about $15,000 dollars for her role in the scheme as a straw owner of Alicare.

All in violation of Title 18, United States Code, Section 371.

AARON REITZ

United States Attorney
Southern District of Texas

By: Tina Ansari
Tina Ansari
Alexander Alum
Assistant United States Attorneys